THE PENNSYLVANIA COAL COMPANY, Respondent, *v.* ELIZABETH M. BLAKE, Impleaded, etc., Appellant.

On March 27, 1873, the firm of C. A. B. & Co. being indebted to plaintiff, an oral agreement was made between them, by which plaintiff agreed to extend the time of payment upon receiving, as collateral security, a mortgage, executed by defendant, E., the wife of C. A. B., who had no interest in the firm, upon lands owned by her. In pursuance thereof, said firm upon that day executed and delivered to plaintiff their notes for the amount of the indebtedness. E. subsequently executed her mortgage, bearing date on that day, but acknowledged April 7, 1873, conditioned for the payment of said notes. In an action to foreclose the mortgage, *held*, that it was executed for a good consideration, and was valid, as the agreement to forbear did not become binding until the mortgage was delivered, and the consideration of benefit to the principal was then received.

On the day the first of the notes fell due, said firm sent to plaintiff checks for the amount thereof, with intent to pay, and requested the same to be applied in payment of the note. Plaintiff objected to such application, and requested that the checks should be applied on the open account of the firm, stating that, if insisted upon, the application would be made in payment of the note; but in that case, the account with the firm would be closed, and payment required and no further credit given. This was not expressly assented to, but no further direction was given as to the application, no demand was made for the note and the firm continued to purchase, and plaintiff to sell on credit. Plaintiff, soon after the interview, credited the checks in the open account and delivered to

the firm receipted vouchers, showing such application. *Held*, that this did not amount to a payment of the note; but the facts showed an acquiescence of the parties in the application made.

Subsequently, the said firm and plaintiff had a settlement, and it was arranged that C. A. B. should assume and pay the balance then unpaid upon the notes, he agreeing to procure a guaranty, by his wife, of such payment, and plaintiff agreeing, on receipt thereof, to release the partners of C. A. B. The latter thereupon executed, with his wife, and delivered to plaintiff an instrument which, after reciting the giving of the notes and mortgage, and acknowledging the balance unpaid thereon, contained a request to plaintiff to release the copartners of C. A. B. from such indebtedness; and the wife, for an expressed " valuable consideration," guaranteed the payment of the said balance " upon demand made of the said " C. A. B., and charged her separate estate therewith. *Held*, that a personal judgment against E. for any deficiency, based upon this guaranty, was proper.

Also *held*, that as by said instrument the first note was treated as unpaid, and as part of the debt assumed by C. A. B. and guaranteed by E. she was estopped from claiming payment.

*It seems*, that a demand for payment of C. A. B. was a condition precedent to liability upon the guaranty.

It was averred in the complaint that a demand was made; the answer contained a general denial of the allegations of the complaint, save the execution of the mortgage and the subsequent agreement. There was no proof of demand on the trial, and it did not appear that the question was there raised or suggested; there was no finding that demand was made, and no request to find, and it did not appear that the point was taken at General Term. *Held*, that the denial in the answer was not one that would positively indicate a purpose to make the question of demand one of the contested issues on trial, although sufficient to authorize the question to be there raised; and that the question could not be raised here.

Also *held*, that, by the application of the check upon the open account, it did not work a valid extension of the time of payment of the notes so as to discharge E. as surety.

Also *held*, that, by her subsequent acts and agreements, E. was estopped from claiming such a discharge.

(Argued March 25, 1881; decided April 26, 1881.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made April 1, 1879, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage executed by defendant Elizabeth M. Blake, who is wife of the defendant Clarence A. Blake, upon real estate owned by her situate in the city of Buffalo, conditioned for the payment of six notes of $10,-000 each, executed by the firm of C. A. Blake & Co. to plaintiff, of which firm said Clarence A. Blake was one of the partners.

The court found in substance that on the 22d day of March, 1873, the said firm was indebted to plaintiff in an amount of over $75,000, of which more than $60,000 was past due. An oral agreement was on that day made between them by which plaintiff agreed to extend the time of payment of $60-000, upon receiving a mortgage executed by Mrs. Blake upon her said real estate. Pursuant to such agreement the said firm executed the six notes mentioned and described in the mortgage, some of them ante-dated, and the mortgage in question was executed and delivered. The mortgage was dated on the day aforesaid. It appeared, however, that it was not executed and acknowledged until April 7, 1873. Mrs. Blake received no consideration for executing the mortgage, and it was not executed for any benefit to her separate estate.

The court also made the following findings:

"That the first of the said notes by its terms became due and payable on the 27th day of October, 1873, and on that day amounted, principal and interest, to the sum of $10,-472.50; that on that day the said firm sent to the plaintiff their three bank checks, one of which was for $10,000, one for $472.50, and one for $5,900; that when the said firm drew such checks and sent them to the plaintiff, they intended to have the two former applied in payment of such note maturing that day; that said plaintiff, on receiving said checks, by George A. Hoyt, who was then the treasurer and general manager of the plaintiff, objected to such application, and insisted that such checks should be applied to the open account. That the defendant Clarence A. Blake being then absent from New York, at which place the transaction took place, it was thereupon arranged between the plaintiff and said firm that the application of the amount of said two checks should be left in

abeyance until the return of said Blake, and that upon his return he and the said George A. Hoyt should determine whether such checks should be applied in payment of the note or upon the open account. That on the 11th or 12th day of November, 1873, the said Blake had an interview with the said Hoyt with respect to such application; that in such interview said Blake expressed his desire that the checks should be applied to the payment of such note; that said Hoyt insisted that they ought to be applied upon the open account; that said Blake did not then expressly assent to the application on the open account; that Mr. Hoyt in the interview told Mr. Blake that if he insisted upon it, the checks should be applied upon the note, but if such application was made, the plaintiff's account with the firm would be closed, and payment of the matured open account expected, and that the plaintiff would no longer sell the firm coal on credit; that with these expressions of their wishes and intentions as to the application of those checks, the interview terminated, neither expressly assenting to or refusing the wish of the other as to such application. That no subsequent direction was given by Mr. Blake as to such application; that he made no demand for the note; that the firm continued to purchase coal of the plaintiff, and that the plaintiff continued to deliver coal to them on credit and open account; that soon after such interview the plaintiff gave the firm credit on its books for the amount of such checks as a payment on the open account, and delivered to the firm receipted vouchers showing such application; that such note remained in the possession of the plaintiff uncalled for by said firm or said Blake; that the plaintiff applied such checks to the open account and not upon the note; that the plaintiff inferred the assent of said firm and of each member thereof to such application, and I find that said firm and each member thereof did acquiesce therein."

The court also found in substance that on February 25, 1876, plaintiff and said firm of C. A. Blake & Co. had a settlement and there was then found due upon said notes the sum of $48,627.50, and it was arranged that Mr. Blake should person-

ally assume and pay such indebtedness ; he to procure the guaranty of his wife, and plaintiff to release the other partners. In pursuance of that arrangement Mr. and Mrs. Blake executed a written instrument, which, after reciting the making of the notes and the mortgage, and the arrangement for the assumption of the indebtedness, contained a request that plaintiff should release the other members of the firm, and an agreement that such release should not affect or impair the liability of Mr. Blake. The instrument also contained the following :

" And we further hereby acknowledge that there is due upon the said promissory notes on the day of the date hereof the sum aforesaid, and that we have no defense, legal or equitable, thereto.

" And I, the said Elizabeth Mason Blake, for a valuable consideration to me in hand paid, do hereby guarantee the payment of said sum of $48,627.50 upon demand made of the said Clarence A. Blake, and I do hereby charge my separate estate with this guaranty, and no extension granted said Clarence A. Blake shall operate to discharge my liability as such guarantor or affect the lien of said mortgage."

In consideration of such agreement and pursuant to the request therein plaintiff released and discharged Blake's partners.

Further facts appear in the opinion.

A personal judgment was entered against Mrs. Blake for any deficiency.

*Grover Cleveland* for appellant. Since the Revised Statutes it is competent for the defendant, in an action upon a sealed instrument, to show a partial or total want of consideration ; neither the recital nor the seal act as estoppels. (*Tallmadge* v. *Wallis,* 25 Wend. 112 ; *John* v. *Miln,* 14 id. 198 ; *Wilson* v. *Baptist Educational Soc.,* 10 Barb. 311, 312.) An extension of time having, in fact, been given, before the party to give the mortgage had ever been applied to, or the mortgage had been given at all, the law will not allow it to be said that it was done on the faith of an instrument not in existence.

(*Crowder* v. *Dick*, 24 Miss. 37; *Wren* v. *Pierce*, 4 S. & M. 91.) The position of Mrs. Blake, in giving the mortgage to secure a debt in which she had no interest, was that of guarantor. (*Bk. of Albion* v. *Burns*, 46 N. Y. 170; *Smith* v. *Townsend*, 25 id. 479; *Barnes* v. *Mott*, 64 id. 397.) The fact is that no consideration passed when she gave her mortgage, and the guaranty not being in existence, and she never having promised to give her mortgage, the law will not allow it to be said that faith was given to that which had no existence. (*Wren* v. *Pierce*, 4 S. & M. 91; *Crowder* v. *Dick*, 24 Miss. 37.) The guaranty was given upon a past consideration and it was not sufficient to sustain any promise. (*Church* v. *Brown*, 21 N. Y. 315, 325; *Farnsworth* v. *Clark*, 44 Barb. 602, 605.) The delivery to the plaintiff, by Blake & Company, of the amount of money due on the first note when it became due, and its retention with a knowledge of Mr. Blake's wishes for its application, constituted in law a payment which released the surety, and which no subsequent arrangement between debtor and creditor could operate to revoke. (*Stone* v. *Seymour*, 15 Wend. 19; *Seymour* v. *Van Slyke*, 8 id. 403; *Patterson* v. *Hall*, 9 Cow. 747; *Truscott* v. *King*, 6 N. Y. 147; *Sheppard* v. *Steele*, 43 id. 60; Brant on Guarantees and Suretyship, § 289; *North America* v. *Meredith*, 2 Wash. C. C. 47; *Miller* v. *Montgomery*, 31 Ill. 350; *Chancellor* v. *Schott*, 23 Penn. St. 68; *Morris* v. *Wheeler*, 45 N. Y. 708.) Plaintiff utterly failed to prove any cause of action upon the guaranty, and the appellant's exception to so much of the court's second conclusion of law as decides that the plaintiff is entitled to a personal judgment against the appellant, was well taken. *Barnes* v. *Barrows*, 61 N. Y. 39, 42; *Eneas* v. *Hoops*, 10 J. & Sp. 517; *Fellows* v. *Prentiss*, 3 Den. 512, 520; *Walrath* v. *Thompson*, 6 Hill, 540; *Mann* v. *Eckford's Ex'rs*, 15 Wend. 502; *East River Bk.* v. *Rogers*, 7 Bosw. 496; *McKensie* v. *Farrell*, 4 id. 203; *Clarke* v. *Burdett*, 2 Hall, 217; *Birks* v. *Treppet*, 1 Saund. 32; *Douglass* v. *Rathbone*, 5 Hill, 143; *Nelson* v. *Bostwick*, id. 39; *Kettle* v. *Sipe*, 6 Barb. 469; *Gillett* v. *Balcom*, id. 373.)

*Sherman S. Rogers* for respondent.    Recital of a consideration and her seal estop defendant from denying that the mortgage was made for a good consideration.    (*McCrea* v. *Purmort*, 16 Wend. 460 ; *Grant* v. *Townsend*, 2 Denio, 336 ; *S. C.*, 2 Hill, 554 ; Herman on Estoppel, § 264 ; 1 Greenl. Ev., § 26 and note.)    The seal imports a consideration, and without the seal the contract is good if there be a consideration, and under our present statute of frauds (as amended in 1863), the consideration need not be expressed.    (3 R. S. [6th ed.] 142 ; *Whitbeck* v. *Warner*, 16 N. Y. 538 ; *Wheeler* v. *Billings*, 38 id. 263 ; *Stackpole* v. *Robbins*, 47 Barb. 212 ; *Murray* v. *Smith*, 1 Duer, 412.)    It is unimportant that the guaranty preceded the release.    (*White* v. *Baxter*, 71 N. Y. 254.)    It was not necessary that Mrs. Blake should be informed of the execution of the release.    No notice of the acceptance of the guaranty is required.    (*Whitney* v. *Groot*, 24 Wend. 82 ; *Smith* v. *Dann*, 6 Hill, 543 ; *Union Bk.* v. *Costar's Ex'rs*, 3 Comst. 204 ; *White* v. *Baxter*, 71 N. Y. 254.)    Plaintiff had the right to join both claims in this action.    (*Scofield* v. *Doscher*, Ct. of App., 17 Alb. L. J. 415 ; 2 R. S., m. p. 154.)

FOLGER, Ch. J.    The first point made by the appellant is, that the mortgage given by her was without consideration and is void.

It is so, that the appellant took no money consideration, nor any strictly personal benefit, for the giving of the mortgage by her.    It was made for the benefit of others than her, entirely as a security for debts owing by them, and to procure for them further credit and favor in business.    In other words, the lands of the appellant became the surety for the liabilities of the business firm of which her husband was a member.    It is so, also, that the contract of surety needs a consideration to sustain it, as well as any other contract.    (*Bailey* v. *Freeman*, 4 Johns. 280 ; *Leonard* v. *Vredenburgh*, 8 id. 29.)    But that need not be something passing from the creditor to the surety.    Benefit to the principal debtor, or harm or inconvenience to the creditor, is enough to form a consideration for the guaranty ;

and the consideration in that shape may be executory as well as executed at the time. (*McNaught* v. *McClaughry*, 42 N. Y. 22; 8 Johns., *supra*.) Now, here was an agreement by the plaintiff to extend the payment of part of the debt owing by the principal debtor for a definite time, if the debtor would procure the mortgage of the appellant as a security for the ultimate payment of the amount of the debt thus extended. (*Sage* v. *Wilcox*, 6 Conn. 81; *Breed* v. *Hillhouse*, 7 id. 523.) Though the actual execution of the mortgage by the appellant was on a day subsequent to that of the agreement between the creditor and the principal debtors, and subsequent to the dates of the extension notes, the mortgage and the notes were made in pursuance of that agreement, in consideration of it and to carry it out. The findings are full and exact on this point, and are sustained by the testimony. There is no proof that the actual delivery of the notes and mortgage was not cotemporaneous; though the dates of the notes and the mortgage and the entry of credit in the books of the plaintiff do not correspond. All was done in pursuance of one agreement, and the plaintiff was not bound to forbearance until the mortgage was delivered. It was not until then that the agreement to forbear was fixed and the consideration of benefit to the principals was had. It was not, therefore, a past consideration.

It is not necessary to consider whether the appellant is not estopped by the agreement of February 25, 1876, from setting up a want of consideration.

The second point made by the appellant is that one of the notes given on the extension was paid by the principals, and that the land is, by so much as the amount of that note, relieved from the lien of the mortgage. The difficulty in upholding this position is in the facts. Doubtless it was the purpose of the principals, when they went to the creditor with the checks, that the note should be paid. They never made the positive offer of them to the plaintiff to that end, in such way as that the plaintiff must take them for that explicit purpose or reject them. If the principals had insisted that the checks should be applied in payment of the notes, they would have been; but

upon being given their option to have them thus applied and their credit on open account stopped, or applied on open account and their credit thereon continued, they preferred the latter. The creditor recognized the right of the debtors to apply where they chose, and but exercised its right to urge and convince to a different application. The appellant, as surety, cannot take any advantage from what passed, for there was never an application to the notes insisted upon by the principals, or made in fact, or more than spoken of, and there was acquiescence by each of the principals in the course that was taken. The checks were not received as a payment; they were not left as a payment; they were left in abeyance, their ultimate application or return to be determined after further consideration. Moreover, by the subsequent agreement, made by the appellant, the note is treated as unpaid, and enters into, and the subject-matter thereof is part of, the joint debt of the principals, assumed by the appellant's husband, guaranteed by her and for the payment of which she pledged her separate estate. This agreement was made on good consideration, expressed in the instrument, and unless the agreements of parties who are married women are to be nothing more substantial than summer winds, she is estopped thereby.

The third point is that there should not have been a personal judgment against the appellant. The judgment is based upon the guaranty contained in what we have called the subsequent agreement, and which contains the individual and personal guaranty by the appellant of the payment of a sum named, upon demand therefor made of Clarence A. Blake, and his refusal or neglect to pay. It is averred in the complaint that a demand was made upon. Clarence A. Blake. There is a general denial in the answer of the allegations of the complaint, save those that state the execution of the mortgage and the agreement. There is no finding that a demand was made. There is no request to find that there was not a demand. There is no proof that there was a demand in fact made. Demand and notice are often duties of imperfect obligation, and may in such case be omitted, if the facts are such that no

benefit can result from the making of them (*Hickling* v. *Hardey*, 7 Taunt. 313); but then he who should have made the demand must show the inutility of them, and that was not done here.     The appellant is a surety, and demand of the principal is a part of the contract (*Nelson* v. *Bostwick*, 5 Hill, 37); it is one of the conditions precedent to her obligation to pay.     If this position had been taken or relied upon at the trial, we should feel obliged to maintain it here.     There is nothing in the case to show that it was suggested or thought of at the trial, where the plaintiff might have shown a demand made, or the utter inutility of one.     The denial in the answer is not one that would positively indicate a purpose to make the matter of a demand one of the contested issues on the trial, though it would have been enough on which to take the position there. It does not appear that the point was made at General Term; rather, from a perusal of the opinion there delivered, we should gather that the position taken was not that there had been no ground for personal liability established, but that the decision of the trial court had made the personal liability absolute and not contingent upon a deficiency arising upon a sale of the lands, a position which is met by the General Term in its observation that though such is the decision, the judgment is as the appellant would have it, in that respect.     On the whole we think that the case shows no error in this particular calling for a reversal or even a modification.

The fourth point is, that if there was no payment of the first note that fell due, then there was an extension of time given to the principals, that discharged the lands.     This is claimed to grow out of the application of money on open account instead of on the note.     It is said that the note not having been paid, the time of payment of it was by that act or omission extended.     The test is, could the surety have paid the note, and enforced the consequent liability against the makers?

There was no valid agreement between them and the payee for an extension, which either could have maintained against the other.     The payee could not, on the ground of a valid extension, have lawfully refused the offer of the surety to pay the

note; nor could the makers on that ground have lawfully resisted the claim of the surety for the amount, had it been paid. Besides, upon this point as well as upon others in the case, the subsequent acts and agreements of the appellant estop her from setting up such facts against a recovery.

It follows that the judgment appealed from should be affirmed.

All concur.

Judgment affirméd. .